UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
DONATO POLICHETTI and SONIA
POLICHETTI,

                              Plaintiffs,

                                                         03 Civ. 10289 (CLB)

            - against -
                                                         *Memorandum and Order*

PETERBUILT MOTOR COMPANY, USA
WASTE SERVICES OF HUDSON VALLEY
and WASTE MANAGEMENT OF
NEW YORK, LLC

                              Defendants.
-------------------------------------------------------
Brieant, J.

        By motion filed on March 18, 2005 (Doc. #28), heard on May 20, 2005, and fully

submitted on May 31, 2005, the sole remaining Defendant in this diversity products liability

case,

controlled by New York law, Peterbilt Motor Company ("Peterbilt"), moves for summary

judgment under Fed. R. Civ. P. 56.  Opposition papers were received by the Court on May 16,

2005.


        The following facts are assumed to be true for purposes of this motion only.  Plaintiff

began working in July 1999 as a driver for Waste Management of New York, LLC, a waste

management company in Warwick, N.Y.  He drove a Peterbilt Model 320 which had been

purchased by Browning Ferris, Inc.[1]  These trucks, which are large "dump-trucks," are custom

---

[1]Waste Management of New York took over the operations of USA Waste Management
Services of Hudson Valley, a division of Browning Ferris.

manufactured and used for street collection of household waste. One listed option is dual-side controls, which allow both right-side as well as left-side operation. Peterbilt offers one configuration including a right-side driver's seat with a seat belt. Right side controls are identical to left-side controls.

The Plaintiff was trained on a dual side truck, which was Peterbilt Number 804, which allowed right side operation, but only while standing up. A seat belt was available on the right side, but was useable only when sitting in the "jump seat," and not while the driver was standing up.[2] Right side operation is used while the driver is picking up waste, and was designed to simplify the operator's work by eliminating the need for the operator to continually use the left side controls to advance the truck from one pick-up location to the next, and to permit him to exit on the right (non-traffic) side of the vehicle. Plaintiff testified that it was Peterbilt company policy that drivers use the right side controls while making pick ups. The left side controls are used for driving between locations.

Plaintiff used Peterbilt Number 804 for approximately four months before switching to Number 803. Number 803 is identical to Number 804. The Plaintiff does not remember complaining about the lack of a seat or seatbelt, and testified that it did not matter to him that he did not have a driver's seat on the right side of the truck

---

[2]At times, workers operate in teams of two. The jump seats are used by the second worker, and not the truck's driver.

On Monday, September 11, 2000, Plaintiff was assigned, alone, to pick up recyclables. That morning, he first checked his truck to ensure that everything was working properly, which it was. He drove using the left-side controls to the first stop. After completing this stop, he began to use the right-side controls. He then continued driving driveway to driveway picking up recyclables. Between approximately 9:30 and 10:00 A.M., Plaintiff was picking up recyclables on the right side of Walling Street. He then turned the truck around to pick up recycles on the other side of Walling Street. It was about fifty feet from the last recyclable pick-up location on Walling Street to the intersection of Walling Street and Prices Switch Road. As Plaintiff proceeded into the intersection, driving still from the right side, he saw a "flash," and applied his brakes. He had been traveling approximately three to four miles per hour.

A 1996 Dodge Ram 4x4 extended cab pickup truck had driven in front of the Plaintiff, and the front of Plaintiff's truck struck the right rear side of the pickup truck.[3] Plaintiff's truck was not damaged, and the pickup truck had a dent in its right bottom quarter panel and its bumper was pushed out. Plaintiff completed his route for the day, which involved driving nearly one hour to the recycling station. Plaintiff claims that he had a headache when he awoke the following day, but this headache did not prevent him from reporting to work. His first visit to a doctor was on November 5, 2000.

Plaintiff filed his personal injury Complaint in New York Supreme Court, Orange County, on September 5, 2003. He alleged nine claims for negligence, breach of warranty and

---

[3]It is unclear who was at fault for this collision, but that issue is not material.

-3-

products liability. On December 30, 2003, the Defendant removed the case to this Court. In this current motion, Defendant argues that Plaintiff's claims are barred by (1) the contract specification defense; (2) the sophisticated buyer defense; and (3) Plaintiff's failure to prove causation.

Fed. R. Civ. P. 56(c) provides that summary judgment shall be rendered if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In evaluating the record to determine whether there is a genuine issue as to any material fact, "the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986).

Plaintiff's claims are based upon a defective design. A defectively designed product is one that leaves the seller's hand in a condition not reasonably contemplated by the ultimate consumer and is unreasonably dangerous for its intended use, meaning that its utility does not outweigh the dangers inherent in its introduction into commerce. *Voss v. Black & Decker*, 59 N.Y.2d 102, 107 (1983). New York's "risk/utility" test is "negligence inspired" and thus little difference exists between a *prima facie* case for negligence and one for strict products liability. *Denny v. Ford Motor Co.*, 87 N.Y.2d 248, 258 (1995). The design defect determination requires evidence of a manufacturer's design choices be introduced and a judgment made about their reasonableness.

Typically a defective design claim presents issues of fact for a jury's determination. One

limited exception to this rule is the sophisticated buyer defense. Under this defense, a manufacturer is not liable for negligent design when the purchaser's employee is injured due to the absence of optional safety equipment offered by the manufacturer, which the purchaser chose not to have installed. *See Scarangella v. Thomas Built Buses, Inc.,* 93 N.Y.2d 655, 660 (1999). In *Scarangella*, the New York Court of Appeals balanced the following factors:

> (1) the buyer is thoroughly knowledgeable regarding its use and is actually aware that the safety feature is available;
>
> (2) there exist normal circumstances of use in which the product is not unreasonably dangerous without the optional equipment; and
>
> (3) the buyer is in a position, given the range of uses of the product, to balance the benefits and risks of not having the safety device in the specially contemplated circumstances of the *buyer's* use of the product.

*Id. at 661* (emphasis in original).


It is undisputed that Browning Ferris, and also Waste Management and any other waste collector were aware that the Peterbilt truck could be purchased with a right-side driver's seat and seat belt. It chose instead to purchase the truck with a standing right side driving position, (along with a right hand jump seat not usable for driving) due to convenience of use and efficiency interests. Plaintiff's prior work experience with Waste Management belies any assertion that all normal circumstances of the truck's use are unreasonably dangerous, as the Plaintiff had worked previously on a similarly designed truck, and had not reported any prior accidents or injuries resulting from the lack of a right side driver's seat or seat belt.


The stand-up right side operating position is not intended for driving; rather it is designed

for slow driveway-to-driveway trash collection. When operated solo, it is much safer for the driver, who exits on the right side, at the curb at each pick-up, rather than on the left side where there is traffic. At the extremely low speeds involved, a collision presents a far greater danger to the second vehicle involved than to the driver of a Peterbilt truck weighing more than ten tons. Plaintiff's protestations to the contrary do not raise a genuine issue of fact for the jury.

Finally, as a large company and specialized purchaser of such trucks, Browning Ferris and Waste Management are in at least the same position, if not a better one, than Peterbilt to balance the risks and benefits of the safety features which are necessary for their own intended use of the truck. These trucks are largely custom manufactured vehicles designed for the specific needs of an individual purchaser. Only a sophisticated purchaser involved in waste collection has the need for such a vehicle.

*Scarangella* controls this case. These Peterbilt trucks comply with federal law, which requires that "a commercial motor vehicle which has a seat belt assembly installed at the driver's seat shall not be driven unless the driver has properly restrained himself with the seat belt assembly." *49 C.F.R. § 392.16.* This regulation does not address a situation where the truck does not have a driver's seat. Federal Motor Vehicle Safety Standard 207 requires each vehicle to have an occupant's seat for the driver, not two. *See 49 C.F.R. 571.207.* The National Highway Traffic Safety Administration has held that "a garbage truck that contained an auxiliary driver's position on the right side of the vehicle, with a separate set of controls [does] not require a seat in the auxiliary position." *See NHTSA Interpretation*, *at*

Http://www.nhtsa.dot.gov/cars/rules/interps/files/garbage.cvs.html. As the federal agency responsible for ensuring highway safety, the NHTSA's interpretations are entitled to deference unless its interpretation violates clear Congressional intent. Where contrary Congressional intent is not clear, the NHTSA's interpretation is entitled to deference if, as it is here, it is based upon a permissible statutory interpretation. *See Chevron, U.S.A., Inc. v. NRDC, Inc.,* 467 U.S. 837, 842-43 (1984). Because a driver's seat is not required on the Peterbilt truck's right side, federal regulations do not require an operator to restrain himself in such a position, and a right side driver's seat and seat belt are at most optional safety equipment under the relevant regulations. Accordingly, *Scarangella* controls and the Defendant is entitled to the sophisticated buyer defense.

### Conclusion

Defendant's motion for summary judgment is granted. The Clerk shall enter a final judgment.

X

X

X

X

SO ORDERED.

Dated: White Plains, New York
      June 1, 2005

                                    Charles L. Brieant, U.S.D.J.